*IN THE CIVIL FEDERAL COURT OF*
*MONTGOMERY COUNTY AND THE STATE OF ALABMA*

*ANGELA DENISE NAILS,*

          *Plaintiff,*        *Case No.* 1:06-CV-00800-MHT

*Vs*

*CHARLES GILMORE,*

          *Defendant,*

## COMPLAINT BREACH OF CONTRACT

*The case follows under the Jurisdiction Actitcle III Section 2a Constitutional law. Subject mater question controversy of $1,000.000.00. The defendant is a resident of Alabama. The plaintiff is a resident of Alabama. Subject mater is the defendant Breach a lease contract. Civil Code Section 1619-1633. The plaintiff civil legal suit is against the defendant because the defendant did breach the lease contract between the defendant and the plaintiff which is a legal agreement. The plaintiff first amendment constitutional right peaceful assembly was a part of the breach of contract.. The defendant knowely breach the lease between the defendant and the plaintiff the breach of contract was June 2005 thur October 2005. Exhibit A lease contract agreement. Exhibit B dates police calls to 103 East Lafayette Street Apartment 1 reports on tenant in Apartment 2 harassment and disturbing the plaintiff knock on the plaintiff front door and moving plaintiff automobile out*

of apartment driveway. The plaintiff is seeking a Reverse Judgement Federal Rule 4(b) of the amount of $265.00 the plaintiff judgement of the defendant. The plaintiff is demanding Court cost of $201.00 Circuit Court cost, Civil Appeal Court cost $100.00 and Supreme Court cost $50.00. as well the sum of travel cost to the courthouse filing of legal documents mileage cost $25.00. The defendant legal contract agreement between the plaintiff and the defendant failed. The defendant wish to harm the plaintiff more than help the plaintiff. The month of October 2005 the plaintiff moved from the rented apartment of the defendant. The plaintiff called the defendant and told the defendant the plaintiff would be moving and told the defendant a date the plaintiff would leaving. Out of spite the defendant went to the courthouse and signed an eviction order. The plaintiff had already moved from the defendant apartment before the eviction. The defendant wants $ 265.00 for back rent which the plaintiff dose not owe to the defendant. The order of eviction the defendant paid $201.00 the plaintiff is not responsible for because the plaintiff had already moved from the apartment. Order for eviction was not warranted or was not needed. The defendant has $225.00 of the plaintiff which was never return to the plaintiff a rent deposit the plaintiff paid to the defendant when moving into the apartment. The plaintiff paid $100.00 upfront and the next month $125.00 making a total deposits $225.00. The events began when the defendant lease an apartment to the plaintiff and the plaintiff was harass day and night from a homeless person who lived with the another renter in the other apartment # 2. The homeless person would always knock on the plaintiff door indicating that lights were on in the truck of the plaintiff at 10:00 pm at night. Wanting to brow items from the plaintiff. The homeless

*person made it a habit of asking the plaintiff to move the plaintiff vehicle out of the private parking lot of the apartments. The tenant renting the apartment banged heavily on the front door of the plaintiff May 25, 2005 the first night the tenant moved into the apartment. John the name of the tenant in apartment #2 use language statement move that dame truck out of the driveway. The plaintiff contacted the manager and the manger stated that my truck could be parked in the parking space provided. The homeless person continually harassed the plaintiff about moving the plaintiff truck. The manager did nothing about the harassment form the homeless person the manager did not have the homeless person on the tenant lease. The defendant told the plaintiff that she would have to get along with the homeless person. The lease states the manager or the tenant can give a 30-day notice to move. The plaintiff gave the defendant an 30-day notice because of the action of the homeless person. Harassment. The apartment manager would not handle the situation the plaintiff was stuck with. Because of the manager action the plaintiff mailed a certified letter explaining to the manager that the plaintiff would be moving the certified letter dated August 26, 2005. The plaintiff and the plaintiff belonging moved from the apartment 103 East Lafayette Street #1 Dothan, Alabama 36301 October 5, 2005. The plaintiff is pleading to the Federal Court for due process law to set matters in the legal Breach of Contract agreement case. Complaint mail to the defendant 466 South Bay Road Dothan, Alabama 36305.*

*Angela Denise Nails*
*ANGELA DENISE NAILS*

*PRO   SE*

*EXHIBIT* A

STATE OF ALABAMA
RESIDENTIAL LEASE AGREEMENT

5/25/05 date this agreement is made between tenant applicant _Denise Nails_ and Charles H. Gilmore, landlord for the premises located at _10 E Lafayette #1_. $225 is the security deposit, $265 is the rent from 6/1/05 through 6/6/05 received of the tenant. Balance due $____ on or before ____ rent of 265 per month is due and payable on the first day of each month and late on the second day of each month.

1. The term of the lease is __6__ months to be renewed automatically for a like term; unless terminated by a written notice or at least thirty (30) days prior to the end of the term. Rent is to be received on or before the first day of the rent month _____ by mail or in person at _____ or at such address designated by the landlord. The rent is due on the (1ˢᵗ) first day of the rent month, late on the (2ⁿᵈ) second day. A late charge of $30.00 will be due on the (3ʳᵈ) day plus $3.00 per day for each additional day, until payment is made in full. There is a $30.00 service charge for a returned check, plus late charges in the aforementioned which the tenant agrees to pay. Security Deposit is to be refunded 3 weeks after move out, less any cost incurred that were made necessary by acts of the tenant and all the terms of the agreement were up held by such.

2. It is expressly provided and made a condition of this lease that the <u>failure of Tenant to pay the agreed rental amount on the dates that the same is due throughout the term of this lease shall terminate the right of the Tenant to continued occupancy of the leased premises and that no ten day notice to terminate tenancy need be given.</u>

3. Tenant agrees that the total number of people in the dwelling shall be __1__. If other persons begin living on the premises with Tenant for whatever reason, Tenant agrees to pay an additional $50.00 per month per additional person as rent for said dwelling.

4. Tenant shall be responsible for the payment of all utilities including water, electricity, gas, garbage, and sewer charges, if any.

5. Tenant agrees that there shall be NO PETS on the leased property without prior written permission of the Landlord. Should Tenant fail to abide by this provision this lease agreement, Tenant agrees to pay Landlord an additional $100.00 per month regardless of the time period the pet is actually present.

6. Tenant has examined the said premises before taking possession and Tenant(s) entry shall be conclusive evidence that as of the date hereon the said premises were in good order and satisfactory condition. Any deficiency must be noted in writing by Tenant.

7. Tenant agrees to use property as personal residence of Tenant, and for no other purposes. Tenant will keep interior and exterior of property in good order and will surrender peaceful and quiet possession of same at termination of this lease in as good condition as when received.

8. During the term of this lease agreement, Landlord shall be responsible for roof leaks and exterior painting. All other needed repairs including repairs of appliances, excluding such that maybe furnished by landlord; clogged drains, broken windows, counter tops, fixtures, walls, ceilings and floor shall be the sole responsibility of the Tenant. Tenant agrees to clean and or change air conditioner and furnace (if any) filters on a monthly basis.
Procedure for repairs: Landlord shall be contacted for repairs costing $35.00 or more; however, should Tenant not be able to reach Landlord, Tenant shall obtain bids from 2-3 repairmen of his choice. Landlord will pay for any repairs that are his responsibility <u>after</u> work has been completed to the satisfaction of both Tenant and Landlord.
A HIGHER LEVEL OF TENANT RESPONSIBILITY IS EXPECTED IN THE RENTAL OF THIS HOME THAN IN AN APARTMENT BUILDING WHERE A RESIDENT MANAGER IS ON THE PREMISES. TENANT UNDERSTANDS THAT PROPERTY IS OWNED BY AN ABSENTEE LANDLORD AND NO READY STAFF IS AVAILABLE FOR REPAIRS. IF THE TENANT IS NOT READY TO ACCEPT A VERY LOW LEVEL OF SERVICE, HE SHOULD NOT SIGN THIS LEASE AGREEMENT.
(continued on next page)

9. New locks or security DEVICES MAY BE INSTALLED BY Tenant only if <u>Landlord is supplied with keys.</u> Landlord or his agent may enter said premises at any time to inspect, repair and maintain same, or to show the property to any prospective buyer, loan or insurance agent, or to any prospective tenant.

10. Tenant agrees to pay the first $100.00 of damage or loss caused from water damage, caused from busted pipes caused by freezing.

11. Landlord shall not be liable for any loss of property by fire, theft, or otherwise from said premises, nor any accidental damage to person or property in or about leased premises, nor any accidental damage to person or property in or about the leased premises resulting from wiring, water, or any other reason, or any other cause whatsoever. Tenant hereby promises and agrees to make no claim for any such loss or damage.

12. <u>Should Tenant fail to pay rent or any sum to Landlord when due,</u> default in any other provisions of the agreement, abandon the rented premises, <u>Landlord, in addition to all other remedies provided by law, may void and terminate this lease,</u> re-enter into possession of the premises and sue for and recover all rent earned up to the date of such entry. Tenant hereby expressly waives the service of notice of such intention to re-enter, or the institution of legal proceedings to that end.

13. If Tenant is absent from the premises for more than three consecutive days while rent is in default, Tenant hereby instructs Landlord to consider the premises abandoned, and to dispose of any property left on the premises as Landlord sees fit, without liability to Landlord.

14. Acceptance by Landlord of partial payment of rent due shall not under any circumstance, constitute or waiver any rights of Landlord, nor affect any notice or legal proceedings in unlawful retainer previously commenced.

15. Tenant shall not assign or sublease the rented premises without the prior express written consent of Landlord.

16. Landlord shall be entitled to recover reasonable attorneys fees and his cost in connection with any action or proceeding to enforce this lease, or to otherwise secure any rights, due him under this lease or as may be accorded him by law.

17. Control of pests or animals on property and keeping the yard free of trash and debris, mowing grass, trimming hedges and such as applicable shall be Tenant's sole responsibility. If such is done by Landlord, tenant agrees to pay $35.00 each time such is done, except for termites, which shall be Landlord's responsibility to eradicate.

18. Any provision of this lease agreement may be changed by Landlord by providing 30 days written notice.

19. It is further expressly agreed by the parties hereto that the undersigned tenant or tenants does hereby waive all rights to exemption of personal property, homestead property, & wages against this debt, cost & expenses. This sheet constitutes the entire agreement between the parties except for additional provisions written here:

_stay refrigerator & ceiling fans, mini blinds furnished_
_also dishwasher, wir & _____

_____

_____

5/25/05
Dated

By _Angela Denise Nails_
_05-27-05_

_Charles L. Richmore_
Landlord

*EXHIBIT* B

342 S St Anchew

3-26-06

2-12-06

_____

103 E. Lafayette

10-05-05

8-15-05
6-3-05